# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————————
)
UNITED STATES OF AMERICA       )
        )
        )
    v.        )       Criminal Action No. 25-261 (RBW)
        )
ANTWAIN DARRELL SIMPSON,    )
        )
       Defendant.    )
        )
———————————————————————

## MEMORANDUM OPINION

The defendant, Antwain Darrell Simpson, is charged with unlawful possession of a firearm and ammunition by a person previously convicted of "a crime punishable by imprisonment for a term exceeding one year[,]" in violation of 18 U.S.C. § 922(g)(1). See Indictment as to Antwain Darrell Simpson ("Indictment") at 1, ECF No. 11. On August 27, 2025, Magistrate Judge G. Michael Harvey granted the government's request for pretrial detention and, over the defendant's objection, ordered the defendant detained pending trial pursuant to the oral motion of the government. See Minute Entry (Aug. 27, 2025). Currently pending before the Court is the defendant's appeal from the order of detention and his request for a hearing. See generally Appeal From Order Of Detention And Request For Hearing ("Def.'s Appeal") at 1, ECF No. 15, and Motion for Hearing, ECF No. 18. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny the defendant's motion for a hearing and affirm Magistrate Judge Harvey's order of detention pending trial for the reasons detailed below.

———————————————————

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Government's Response To Defendant's Appeal From Order Of Detention ("Gov't's Response") at 1, ECF No. 23 and Exhibit 1, ECF No. 29; (2) the Order of Detention Pending Trial (Aug. 29, 2025) at 1 ("Detention Order"), and its Addendum ("Detention Order Addendum"), ECF No. 10.

# I.    BACKGROUND

## A.    Factual Background

On the evening of August 22, 2025, officers from the "Metropolitan Police Department's ("MPD") Fifth District Crime Suppression Team were . . . in full uniform and [in] a marked police vehicle[,]" "patrolling [an area of] NE, Washington, D.C. [ ], with federal law enforcement officers."  Gov't Response at 2.

MPD Officers Manuel Sibrian, Malik Harleston, and Frederick Onoja "observed a group of individuals congregating on the sidewalk in front of 1427 Saratoga Avenue NE[.]"  Id. at 12; Def.'s Appeal at 7–8.  The defendant was among the "group of individuals[,] . . . sitting in a lawn chair[,] holding . . . a small personal sized wine bottle."  Gov't Response at 2.  "Officer Sibrian observed [the defendant] place the wine bottle underneath [his] chair."  Id.  According to the government, "[t]he wine bottle appeared to be mostly empty with a small amount of red liquid visible inside of the bottle."  Id.

"Officer Sibrian also observed that [the defendant] was wearing a crossbody satchel[, that] was partially unzipped and . . . [saw] what appeared to be a mylar bag inside of the [defendant's] satchel.  Id.  The government contends that "Officer Sibrian [was] aware that mylar bags are frequently used to store marijuana."  Id.

"Officer Sibrian repeatedly shined his flashlight at [the defendant,]" Def.'s Appeal at 10, and eventually asked the defendant "how much weed" he had in his bag."  Id. at 13.  The defendant "grabbed his [ ] bag and responded: 'Not a lot.'"  Id.  "Officer Sibrian asked [the defendant] to fold up the bag, at which point [the defendant] further unzipped the crossbody satchel and removed a white mylar bag."  Gov't Response at 2–3.  Since Officer Sibrian believed that "the mylar bag appeared large enough to hold more than 2 ounces of marijuana[,]

Officer Sibrian and Officer Harleston [ ] approached [the defendant] and placed [him] in handcuffs." <u>Id.</u> at 3.

After the defendant was handcuffed, "Officer Sibrian conducted a protective pat down of [the defendant,] [ ] felt a hard object consistent with a firearm in [the defendant]'s pants[,] and . . . recovered a," <u>id.</u> at 3, "black, 9mm, Springfield Armory Hellcat pistol," <u>id.</u> at 4, "from inside the front waistband of [the defendant]'s pants." <u>Id.</u> at 3.  According to the government, "[t]he firearm was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity." <u>Id.</u> at 4.

"Officer Sibrian [then] returned to the [lawn] chair where [the defendant] had been sitting and recovered [the] wine bottle." <u>Id.</u> at 5.  The officers also conducted a search of the defendant's "bag and recovered [ ] [seven] items:"

- (One) "1 clear, twisted piece of plastic containing a white rock-like substance with a weight of 5.6 grams, which field-tested positive for cocaine base;"
- (Two) "1 large 'White Trufflez' plastic resealable 'Mylar' bag containing a green-leafy substance with a weight of 57.5 grams which field-tested positive for THC;"
- (Three) "1 black in color digital scale with green-leafy residue;"
- (Four) "4 empty 'Pink Marshmallow' plastic resealable 'Mylar' bags containing green leafy residue;"
- (Five) "2 large black in color empty plastic resealable 'Mylar' bags containing green-leafy residue;"
- (Six) "13 clear sandwich bags containing green-leafy residue; and"
- (Seven) "1 multi[-] color grinder containing green-leafy residue."

<u>Id.</u> at 5–6.

The officers also "seized [the defendant's] car keys" "[a]fter arresting [the defendant,]" even though the defendant was not arrested near his car, the car was not running, and no one was inside of the car.  Def.'s Appeal at 16.  The officers "press[ed] a button on [the defendant's] key, . . . heard a car horn[,] and [ ] made their way to [the defendant's] car." <u>Id.</u>  "The officers did not obtain a warrant to search the car[, and] no canine alerted to the car." <u>Id.</u>

Important to the pending charge against the defendant, the officers also "determined that [the defendant] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year." Gov't's Response at 7. Specifically, in 2021, the defendant was convicted of "Assault with Significant Bodily Injury in [the] Superior Court [of the District of Columbia] . . . and sentenced to 24 months incarceration." Id. at 7–8. Additionally, in 2009, the defendant was convicted of "Possession of a Firearm after a Felony Conviction and Carrying a Handgun in the Circuit Court for Prince George's County." Id. at 8.

**B.      Procedural Background**

On August 24, 2025, the defendant was charged by criminal complaint "with one count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm)." Id.; Detention Order Addendum at 1. During the defendant's initial appearance on August 26, 2025, "the government orally moved for detention pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm)[,]" and, after a detention hearing the next day, Magistrate Judge Harvey "ordered [the defendant] detained pending trial." Id. at 8. Magistrate Judge Harvey concluded that the government proved "by clear and convincing evidence that no condition or combination of conditions of release [would] reasonably assure the safety of any other person and the community." Order of Detention at 2.

Subsequently, on September 2, 2025, a Grand Jury returned an indictment charging the defendant with one count of violating § 922(g)(1), see generally Indictment at 1, and this Court arraigned the defendant on September 17, 2025. Minute Entry (Sept. 17, 2025). The defendant then moved to appeal the order of detention imposed by Magistrate Judge Harvey on October 21, 2025, see generally Def.'s Appeal at 1, and the government filed its response to the defendant's appeal on October 27, 2025. See generally Gov't's Response at 1.

## II.    STANDARD OF REVIEW

The Bail Reform Act of 1984 "authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel."  United States v. Salerno, 481 U.S. 739, 755 (1987).  A felony "that involves the possession or use of a firearm[,]" is one such type of serious felony that may subject an individual, upon motion of the government, to pretrial detention.  18 U.S.C. § 3142(f)(1)(E).  Additionally, in a case in which the defendant has been previously convicted of unlawful possession of a firearm, there is "a rebuttable presumption [ ] that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community."  18 U.S.C. § 3142(e)(2)(A).

In "determining whether there are conditions of release that will reasonably assure the . . . safety of any other person and the community," id. § 3142(g), courts must "take into account the[:]

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm[;]

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id. (referenced herein as the "§ 3142(g) factors"). "[T]he burden of persuasion remains with the government throughout the [detention] proceeding." United States v. Jaffee, No. 19-88 (RDM), 2019 WL 1932549, at *4 (D.D.C. May 1, 2019). And, the government must show "by clear and convincing evidence" "that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f).

If a magistrate judge orders a defendant detained pre-trial, the defendant "may file 'a motion for revocation or amendment of the order' with 'the court having original jurisdiction over the offense.'" United States v. Padilla, 538 F. Supp. 3d 32, 38 (D.D.C. 2021) (quoting 18 U.S.C. § 3145(b)). The Court reviews "a magistrate judge's detention order . . . de novo." Id. at 38–39.

## III.    ANALYSIS

The defendant contends that officers in this case "acted in an unreasonable and unconstitutional manner in arresting" him, and those actions "threaten[] the viability of this case." Def.'s Appeal at 3. Additionally, the defendant argues that the "[g]overnment has offered no argument that [he] poses any risk of flight[,] [a]nd the [g]overnment failed to meet its burden to prove by clear and convincing evidence that [his] release would pose any danger to the community." Id. Accordingly, the defendant asks the Court to "revoke the Order of Detention and set appropriate conditions of pretrial release[,]" id., such as "GPS monitoring and home detention," id. at 22.

The government does not seem to dispute the defendant's position that he does not pose a flight risk, but contends that this Court should affirm Magistrate Judge Harvey's order of detention because the defendant "presents a danger to the community" based on his "history of

criminal conduct involving violence, firearms, [ ] drugs, and [ ] difficulty complying with court-imposed release conditions."  Gov't's Response at 1.

Because the Court finds, by clear and convincing evidence, that each of the § 3142(g) factors detailed below weigh in favor of the government's position that the defendant's release would pose a danger to the community, the Court affirms the magistrate judge's Order of Detention, and denies the defendant's motion for a hearing.

### A.    The Nature and Circumstances of the Offense

Section 3142(g)(1) requires that the Court consider "the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm."  The D.C. Circuit has explained that "[t]he distinction between 'nature' and 'circumstances' clarifies that the former refers to the generic offense while the latter encompasses the manner in which the defendant committed it."  United States v. Singleton, 182 F.3d 7, 12 (D.C. Cir. 1999).  Therefore, "case-specific facts [are] the focus for the pretrial detention or release decision."  United States v. Blackson, No. 23-cr-25 (BAH), 2023 WL 1778194, at *6 (D.D.C. Feb. 6, 2023), aff'd 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

As to the general nature of the offense here, the defendant has been indicted for the commission of a serious offense involving a firearm—specifically Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).  See Indictment at 1.  If convicted, the defendant is eligible for a maximum sentence of fifteen years imprisonment and/or a fine.  See 18 U.S.C. § 924(a)(8); see also Blackson, 2023 WL 1778194, at *7 (same).  Although the D.C. Circuit long ago held that an alleged violation of § 922(g) is not "a crime of violence", Singleton, 182 F.3d at 16, the Court agrees with Magistrate Judge Harvey that the

circumstances, i.e. the manner in which the charged offense was allegedly committed, weigh against the defendant's pretrial release.

Specifically, Magistrate Judge Harvey found that because the defendant is "a felon in possession of a loaded firearm while out in public in a busy neighborhood[,]" Detention Order Addendum at 6, he "would be a danger to the community on pretrial release." Id. The fact that the defendant was not using the firearm when officers located it in his waistband did not change the magistrate judge's analysis because "[j]udges of this [district] have consistently recognized the inherent dangerousness of carrying a loaded firearm in public, irrespective of whether the defendant has used the firearm." Id. (citing Blackson, 2023 WL 1778194 at *7 (finding that illegal possession of a loaded, concealed firearm "with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community" and that the absence of evidence that a gun was used "does little to detract from" that danger); United States v. Gassaway, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sep. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public.")).

Despite the magistrate judge's findings, and the case law in this district, the defendant contends that "[t]here is no allegation that [he] used a firearm to threaten or harm another individual[,] [n]or is there any allegation that officers responded to the scene for a report of shots fired." Def.'s Appeal at 6. However, the government responds that the defendant's conduct posed a danger to the community because he "possess[ed] a loaded firearm, . . . [a] distribution level amount of cocaine base and marijuana[,] [and] paraphernalia consistent with distribution." Gov't's Response at 12. The Court agrees with the government.

The defendant was "detain[ed] []for possessing an open container of alcohol" while "in a residential neighborhood" Id. at 12.  When officers conducted a protective search of the defendant while he was detained, they "found a loaded 9mm Springfield Armory Hellcat pistol in [his] front waistband." Id.  The gun had "1 round in the chamber and 11 rounds in a magazine with a 13-round capacity." Id.  Moreover, the government contends that the defendant was carrying "5.6 grams" of "a white rock-like substance" that "field-tested positive for cocaine base, id. at 5, "57.5 grams" of "a green-leafy substance" that "field tested positive for THC[,]" id., a "digital scale with green-leafy residue[,]" id. at 6, and other items consistent with drug distribution.  Id. at 12; see United States v. Hubbard, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (citing United States v. Sheffield, 799 F. Supp. 2d 18, 19–20 (D.D.C. 2011) (explaining that the "Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.")).  The allegation that the defendant was carrying a loaded firearm and, at a minimum, a distribution amount of cocaine base and items used in the distribution of illegal drugs, support the government's position that collectively these factors establish that the defendant was engaged in dangerous activity at the time of his arrest.  See Smith v. United States, 508 U.S. 223, 240 (1993) (explaining that in enacting the penalties for gun related offenses, Congress "was no doubt aware that drugs and guns are a dangerous combination"); Blackson, 2023 WL 1778194 at *7 (similarly finding that illegal possession of a loaded, concealed firearm "with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community").[2]

---

[2] The defendant also highlights other alleged actions law enforcement officers took against other individuals who were present when the defendant was arrested as support for his position that the officers engaged in "constitutional violations" not only against him, but also against those other individuals.  Def.'s Appeal at 14–17.  While disturbing if accurate, this Court will not consider "whether evidence will be suppressed" in a future proceeding in its analysis of whether the government has shown by clear and convincing evidence that the defendant poses a danger to the community and should therefore be detained pretrial.  See United States v. Williams, 967 F. Supp. 2d 357, 359 n.2

(continued . . .)

Therefore, because the defendant possessed a loaded firearm that was easily accessible in the waistband of his pants, while on the sidewalk in a residential area, and while in possession of illegal drugs and other items indicating his involvement in illegal drug distribution, the Court finds that the nature and circumstances of the offense weigh in favor of the defendant's pretrial detention.

### B.    The Weight of the Evidence Against the Defendant

The second § 3142(g) factor courts must consider in determining whether there are release conditions that will assure the safety of the community after a defendant is charged with violating a statute such as §922(g)(1), is "the weight of the evidence against the person[.]" Magistrate Judge Harvey found that this "factor [ ] weighs in favor of detention" because "[t]he firearm was found on [the d]efendant's person." Detention Order Addendum at 6.

The defendant cites out-of-circuit authority for his contention that "the weight of the evidence is the least important of the various [§ 3142(g)] factors." Def.'s Appeal at 18 (citing United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985)).[3] Moreover, the defendant urges the Court to focus only on the defendant's dangerousness rather than his guilt, id., to which the government responds that its "case against [the] defendant [ ] is strong[,]" Gov't's Response

---

(. . . continued)
(D.D.C. 2013) (explaining that the court would not consider whether a traffic stop amounted to an illegal search in a pretrial detention proceeding).

[3] Although the defendant contends that the weight of the evidence is the least important § 3141(g) factor for the Court to consider, the defendant cites no authority that it should not be considered at all by the Court. Although judges in this district allocate varying degrees of weight to this factor, no judge in this district disregards the weight of the evidence in analyzing whether the § 3141(g) factors favor detaining a defendant pre-trial. See Blackson, 2023 WL 1778194 at *8 n.4 (citing decisions by Judge Bates, Judge Sullivan, and Judge Contreras); United States v. Olson, 25-cr-69-1 (RCL), 2025 WL 1067684, *3 n.3 (D.D.C. April 9, 2025) (acknowledging the significance the Ninth Circuit apportions to the "weight of the evidence" factor, but deciding that the "weight of the evidence" factor should not be given lesser weight than the other § 3141(g) factors). Nor could it, since "tak[ing] into account the available information concerning . . . the weight of the evidence against the person" is not discretionary. 18 U.S.C. § 3141(g)(2) (providing that "[t]he judicial officer shall . . . take into account the available information concerning . . . the weight of the evidence against the person") (emphasis added).

at 14, and "there is no question that the defendant possessed the firearm that he is alleged to have unlawfully possessed." Id.

The Court once again agrees with the government in concluding that the weight of the evidence supports the defendant's detention pretrial. The evidence needed to show that the defendant unlawfully possessed a firearm is straightforward—the government need only show that the defendant possessed a firearm at a time when he was previously convicted of a felony. See United States v. Clark, 184 F.3d 858, 865 (D.C. Cir. 1999) (quoting 18 U.S.C. § 922(g)(1)) ("An element of the offense of unlawful possession of a firearm by a convicted felon is that the defendant be previously convicted of 'a crime punishable by imprisonment for a term exceeding one year.'"). And that burden has been satisfied. See Gov't Response at 3–4, 7–8 (alleging that the officers found a 9mm Springfield Armory Hellcat pistol in the waistband of the defendant's pants and determined that the defendant had been previously convicted of Assault with Significant Bodily Injury in 2021). Accordingly, the Court concludes that the weight of the evidence also supports the defendant's pretrial detention.

### C.    The Defendant's History and Characteristics

In assessing the defendant's history and characteristics, the Court is required:

> to consider (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.

§ 3142(g)(3).

Magistrate Judge Harvey found that the defendant "has a lengthy criminal history dating back to 1998." Detention Order Addendum at 7. Specifically, he noted that the defendant had

been convicted of several felonies, including for the offenses of "Unlawful Taking of a Motor Vehicle in 1999, . . . Carrying a Dangerous Weapon—Gun and Possession of a Firearm after a Felony Conviction in 200[8], and most recently a felony conviction for Assault with Significant Bodily injury in 2021." Id. As to the 2021 conviction, the defendant broke an individual's jaw that required the person's hospitalization. Id. The magistrate judge concluded that this conviction was "particularly concerning because it is violent." Id. (citing Gassaway, 2021 WL 4206616, at *5 ("[W]here [the defendant's] most recent criminal history includes a violent offense involving the use of a firearm, the Court is even more concerned that [his] inability to comply with the law would pose a danger to the community if he was released.")). Moreover, Magistrate Judge Havey noted that the defendant "has a spotty history of compliance with conditions of supervised release." Id. Accordingly, he observed that the defendant's history did not suggest "that, if released, [the d]efendant would refrain from illegal activity, including again possessing a loaded firearm in public." Id.

In his appeal to this Court, the defendant contends that "much of [his] criminal history is so dated [that it has] little probative value for the detention inquiry." Def.'s Appeal at 19. The defendant explains that his 2021 conviction for Assault with Significant Bodily Injury stemmed from an incident where "a man accosted [the defendant] outside of a convenience store[, and the defendant] punched the man[.]" Id. The defendant represents that he pleaded guilty to this offense, "was ordered released on conditions[,] [and] complied with his conditions of release." Id. The defendant also argues that his "only conviction for conduct involving the possession of a firearm dates back more than 17 years." Id. at 21.

In response, the government contends that this factor "heavily favors detention" because "[o]ver the past 27 years, [the defendant] has been convicted 8 times and arrested 21 times."

Gov't's Response at 15.  Moreover, the government notes that in addition to the defendant's prior conviction for possessing a firearm after being convicted of an earlier felony, he also has a prior 2002 conviction for Possession with Intent to Distribute Cocaine, amongst other previous crimes.  Id. at 15–16.  The government also notes that the defendant has a history of violating his conditions of release.  See Gov't's Response at 15–16 (explaining that the defendant's probation or supervised release was revoked in 2003, 2004, 2007, 2009, and 2012).

The Court acknowledges that the defendant has positive history and other characteristics, such as the fact that he has been a "lifelong resident of the [D.C.] area[,] . . . has a GED[,] "lives in a home with his significant other . . . and their two minor children[,] [and] . . . worked in sanitation for the District of Columbia Department of Public Works" before his arrest.  Def.'s Appeal at 19.  Additionally, the defendant represents that he has complied with the prior conditions of release for his most recent 2021 conviction for Assault with Significant Bodily Injury, and was not on probation, parole, or supervised release when he was arrested in this case. Id.  However, despite his family involvement and these recent instances of good behavior, they do not outweigh the defendant's lengthy criminal history and the fact that he has violated his conditions of release multiple times, which weigh against his pretrial release.

For example, the defendant's most recent 2021 conviction was a crime of violence— Assault with Significant Bodily Injury.  See United States v. Kent, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), aff'd (Nov. 5, 2020) ("carrying a loaded firearm—especially if the carrier has a violent history has the great potential to escalate into violence") (citation modified).  He also has been previously convicted of an unlawful gun possession offense.  And, despite this gun possession charge being 17 years old, the defendant has also been convicted of several other offenses in the past.  See Gassaway, 2021 WL 4206616, at *4 (ordering a defendant be held

pending trial where the defendant had four prior felony convictions for gun-related offenses, with the most recent involving armed robbery seven years earlier); Gov't Response at 18 (discussing United States v. Ikea Gartrell, No. 25-cr-84 (Walton, J.), in which this Court detained the defendant pretrial even though the defendant's two gun related offenses occurred fourteen and eleven years earlier).

Moreover, the defendant has violated previously imposed conditions of release many times, which neutralizes the significance of one recent instance in which the defendant complied with his conditions of release. Additionally, the reasons for some of the defendant's previous revocations of probation or supervised release were because the defendant "began testing positive for illegal substances," Gov't Response at 16, and in the present case the defendant was allegedly found with illegal drugs on his person. The Court therefore cannot find that the defendant will not again act in defiance of the law or court orders if he is released.

Thus, because the defendant's positive characteristics and history noted above do not outweigh the significance of the defendant's history of committing crimes, his history of substance abuse, and his history of violating his conditions of release, the Court finds that the defendant's history and characteristics weigh in favor of his pretrial detention.

### D.    The Nature and Seriousness of the Danger to the Community

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). Therefore, "the defendant's history, characteristics, and alleged criminal conduct [must] make clear that he . . . poses a concrete, prospective threat to public safety." Id. "Consideration of this factor encompasses much of the

analysis set forth above, but it is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." United States v. Taylor, 289 F. Supp. 3d 55, 70 (D.D.C. 2018). In conducting the analysis of this last § 3142(g) factor, the "Court may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." Id. (citing United States v. Smith, 160 F. Supp. 3d 280, 284 (D.D.C. 2016) and United States v. Douglas, 535 F. Supp. 2d 118, 120 (D.D.C. 2008)).

Magistrate Judge Harvey relied on his reasoning as to the other three § 3142(g) factors discussed above to conclude that "it [was] clear . . . that [the] [d]efendant represents a danger to the community because of his criminal conduct involving violence, firearms, and drugs, as well as his demonstrated difficulty abiding by court-imposed release conditions." Detention OrderAddendum at 7–8.

In the defendant's appeal, he argues that the "[g]overnment has failed to identify any specific, non-speculative threat [the defendant] poses to the community." Def.'s Appeal at 21. The government responds that the defendant "possessed a firearm while on a busy street in a residential neighborhood while he appeared to be drinking alcohol and [was] in possession of drugs and drug paraphernalia." Gov't's Response at 19. The government further contends that the defendant "poses an obvious and articulable threat to the community as evidenced by his recidivism." Id.

The Court finds that the government has shown by clear and convincing evidence that the defendant is likely to be a danger to the community if he were released pending the resolution of this case. This finding is based on the defendant having been previously convicted of a similar crime in 2008 (Carrying a Dangerous Weapon—Gun and Possession of a Firearm After being Convicted of a Felony), see Gov't's Response at 16, recently being convicted of a crime of

violence (Assault with Significant Bodily Injury), see Gov't Response at 17, and previously repeatedly violating imposed conditions of release. See Gov't Response at 15–17 (citing at least five instances where the defendant failed to comply with conditions of probation or supervised release). Moreover, the defendant has a history of illegal drug abuse, and when arrested in this case he again possessed illegal drugs, namely, 5.6 grams of cocaine base, and 57.5 grams "of a green leafy substance" which field-tested positive for THC. Gov's Response at 5–6, 16; Gassaway, 2021 WL 4206616, at *5 (finding that this factor weighed in favor of detention, because of the defendant's "history of recidivist behavior" and also his "unwillingness to comply with court orders."); Munchel, 991 F.3d at 1280–81 (explaining that a defendant's "potential compliance is relevant to the ultimate determination of 'whether there are conditions of release that will reasonably assure . . . the safety of . . . the community.'").

Thus, because the defendant has an extensive criminal history, has previously been convicted of unlawfully possessing a firearm, has committed a crime of violence within the last four years, in this case again allegedly possessed a loaded firearm in public in a residential area, and also allegedly possessed distribution levels of illegal drugs and items used in the illegal distribution of drugs, the government has established that the defendant's release would pose a danger to the community and setting conditions of release will not assure that the community will remain safe from further criminal conduct by the defendant pending the resolution of this case. The Court therefore concludes that the nature and seriousness of the danger to the community factor weighs in favor of detaining the defendant pretrial.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that all § 3142(g) factors—the nature and circumstances of the offense, the weight of the evidence, the defendant's history and

characteristics, and the nature and seriousness of the danger to the community—weigh in favor of detaining the defendant pretrial.  Accordingly, the Court affirms the decision of the magistrate judge to detain the defendant pretrial and denies the defendant's motion for a hearing because the filings submitted by the parties are sufficient for the Court to decide the defendant's appeal.

**SO ORDERED** this 18th day of November, 2025.[4]

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.