**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ANTWAIN SIMPSON,**<br><br>**Defendant.** | **Case No. 25-cr-261 (RBW)** |

<u>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**</u>
<u>**TANGIBLE EVIDENCE**</u>

The defendant, Antwain Simpson, moves this Court to suppress the tangible evidence police recovered from his person on August 22, 2025, including a loaded firearm, as fruits of an unlawful stop and seizure. The Court should deny the defendant's motion. Police lawfully recovered the firearm from the defendant's waistband during a search incident to his arrest for possession of an open container of alcohol. And even if the police lacked probable cause to arrest Mr. Simpson for possessing an open container of alcohol, the police would have inevitably discovered the firearm in the defendant's waistband. This is because officers developed reasonable articulable suspicion to detain Mr. Simpson, and probable cause to search his satchel, for evidence of the possession and distribution of illegal drugs. Accordingly, officers would have discovered the firearm search incident to the defendant's arrest for that offense. Therefore, the defendant's motion to suppress should be denied.

<u>**FACTUAL BACKGROUND**</u>

On August 22, 2025, at approximately 11:00 p.m., members of the Metropolitan Police Department's ("MPD") Fifth District Crime Suppression Team were patrolling the 1400 block of Saratoga Avenue NE, Washington, D.C. 20018, with federal law enforcement officers. MPD

Officers Manuel Sibrian, Malik Harleston, and Frederick Onoja were in full uniform and operating a marked police vehicle while patrolling the area. The MPD officers were equipped with body-worn cameras ("BWC").

As MPD Officers Sibrian, Harleston, and Onoja were driving westbound in the 1400 block of Saratoga Avenue NE, they observed a group of individuals congregating on the sidewalk in front of 1427 Saratoga Avenue NE. (Exhibit 1, BWC Officer Manuel Sibrian, 22:01:31-22:01:44). Officer Sibrian observed one of those individuals, who was later identified by his Maryland driver's license as Antwain Simpson, sitting in a lawn chair holding a small personal sized wine bottle. Before officers could approach Mr. Simpson, Officer Sibrian observed Simpson place the wine bottle underneath his chair. After Officer Sibrian exited his police cruiser, Officer Sibrian walked towards Simpson and observed the wine bottle underneath Simpson's chair. (Exhibit 1 at 22:01:45-22:03:02). The wine bottle appeared to be mostly empty with a small amount of red liquid visible inside of the bottle.

Officer Sibrian was the first MPD officer to approach Mr. Simpson. The other MPD officers initially engaged with another group of individuals who were congregating on a sidewalk on the opposite side of Saratoga Avenue NE. (Exhibit 2, BWC of Officer Malik Harleston, at 22:01:42-22:02:12). Officer Sibrian waited for Officer Harleston to join him before speaking or engaging with Mr. Simpson. (Exhibit 1 at 22:03:27-22:03:42; Exhibit 2 at 22:03:27-22:03:42). As Officer Harleston and Officer Sibrian approached Mr. Simpson, a wine bottle is clearly visible underneath Mr. Simonson's chair on his left side. (Exhibit 2 at 22:03:38-22:03:55; *see* Figure 1 below).



**Figure 1 – Wine Bottle Visible Underneath Mr. Simpson's Chair on his left side.**

Officer Sibrian also observed that Mr. Simpson was wearing a crossbody satchel. The crossbody satchel was partially unzipped and Officer Sibrian could see what appeared to be the resealable portion of a mylar bag in Mr. Simpson's satchel. Based on his training and experience, Officer Sibrian is aware that mylar bags are frequently used to store marijuana. Officer Sibrian told Mr. Simpson he could see that his crossbody bag was slightly open and asked Simpson how much weed he had in the bag. (Exhibit 1 at 22:03:42-22:03:45). Simpson responded, "not a lot" and lifted and squeezed his crossbody satchel. (Exhibit 1 at 22:03:45-22:03:52). Officer Sibrian asked Simpson to fold up the bag, at which point Simpson further unzipped the crossbody satchel

and removed a white mylar bag. (Exhibit 1 at 22:03:52-22:03:60). When Mr. Simpson removed the white mylar bag from the satchel, Officer Sibrian could see into the satchel and observed what appeared to be additional mylar bags and clear plastic bags. Based on Officer Sibrian's training and experience, the white mylar bag Mr. Simpson removed from the satchel appeared large enough to hold more than 2 ounces of marijuana. Based on Officer Sibrian's training and experience, including his knowledge about the sale of illegal narcotics in the area around the 1400 block of Saratoga Avenue NE, the additional clear plastic bags and mylar bags, visible in Mr. Simpson's satchel, appeared to be consistent with the distribution of illegal drugs.

Officer Sibrian and Officer Harleston then approached Simpson and placed Simpson in handcuffs. (Exhibit 1 at 22:04:01-22:04:25). After Simpson was handcuffed, Officer Harleston began to search Mr. Simpson's satchel, removing the white mylar bag and a scale. (Exhibit 2 at 22:04:20-22:04:31). Officer Sibrian then conducted a protective pat down of Simpson and felt a hard object consistent with a firearm in Simpson's pants. (Exhibit 1 at 22:04:21-22:04:40). Officer Sibrian announced the predetermined codeword for the presence of a firearm and officers recovered a firearm from inside the front waistband of Simpson's pants.



**Figure 2 – The black, 9mm, Springfield Armory Hellcat pistol bearing serial number BA648969 inside of SIMPSON'S waistband.**

The firearm officers recovered from Simpson's waistband area was a black, 9mm, Springfield Armory Hellcat pistol bearing serial number BA648969. The firearm was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity. The firearm appeared to be fully functional, designed to expel a projectile by means of an explosive action, had a barrel length of less than twelve inches, and had the ability to be fired by the use of a single hand.



**Figure 3 - The black, 9mm, Springfield Armory Hellcat pistol bearing serial number BA648969 that was loaded with 1 round in the chamber and 11 rounds in a magazine with a 13-round capacity.**

After officers detained Simpson, Officer Sibrian returned to the chair where Simpson had been sitting and recovered a small personal sized Sutter Home wine bottle.  When Officer Sibrian recovered the bottle, he could smell the odor of an alcoholic beverage.



**Figure 4 (left) – Photograph of the wine bottle underneath SIMPSON'S chair.**
**Figure 5 (right) – Officer Sibrian holding the wine bottle recovered from underneath SIMPSON'S chair.**

Officers conducted a search of Simpson's crossbody bag and recovered the following items:

- 1 clear, twisted piece of plastic containing a white rock-like substance with a weight of 5.6 grams, which field-tested positive for cocaine base;

- 1 large "White Trufflez" plastic resealable "Mylar" bag containing a green-leafy substance with a weight of 57.5 grams which field-tested positive for THC;

- 1 black in color digital scale with green-leafy residue;

- 4 empty "Pink Marshmallow" plastic resealable "Mylar" bags containing green-leafy residue;

- 2 large black in color empty plastic resealable "Mylar" bags containing green-leafy residue;

- 13 clear sandwich bags containing green-leafy residue; and

- 1 multi color grinder containing green-leafy residue.

Officers also recovered ten dollars in U.S. currency from Simpson's right pants pocket.



**Figure 6 (left): White mylar bag recovered from SIMPSON'S crossbody satchel. Figure 7 (right): Interior of white mylar bag recovered from SIMPSON'S crossbody satchel containing green leafy substance.**



**Figure 8 – Photograph of SIMPSON'S crossbody satchel, items recovered from the crossbody satchel, and currency recovered from SIMPSON'S right pants pocket.**

Officers determined that Simpson had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. Simpson was previously convicted in 2021 of Assault with Significant Bodily Injury in D.C. Superior Court Case Number 2021 CMD 000704 and sentenced to 24 months incarceration. Simpson was also previously convicted in 2009 of

Possession of a Firearm after a Felony Conviction and Carrying a Handgun in the Circuit Court

for Prince George's County Case Number CT081741X.  On the charge of Possession of a Firearm

after a Felony Conviction, Simpson was sentenced to 5 years' incarceration, with 1,285 days

suspended.  On the charge of Carrying a Handgun, Simpson was sentenced to 3 years'

incarceration, with 555 days suspended.  Accordingly, Simpson would have been aware that he

was previously convicted of a crime punishable by a term of imprisonment exceeding one year at

the time he was found in possession of the firearm and ammunition.

Mr. Simpson was arrested by police for multiple D.C. Code offenses including Unlawful

Possession of a Firearm by a Person Convicted of a Crime Punishable by a Term of Imprisonment

Exceeding One Year in violation of D.C. Code § 22-4503(a)(1), Possession of an Open Container

of Alcohol in violation of D.C. Code §§ 25–1001(a), (d), Possession with Intent to Distribute a

Controlled Substance in violation of D.C. Code § 48-904.01(a)(1), and Possession with Intent to

Distribute Marijuana-misdemeanor in violation of D.C. Code § 48-904.01(a)(1).  (*See* Exhibit 3,

Offence/Incident Report Cover Sheet).

## PROCEDURAL HISTORY

On August 24, 2025, the Court approved a criminal complaint charging Simpson with one

count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). On August 26, 2025,

at the defendant's initial appearance, the government orally moved for detention pending trial

pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm).  Following a

detention hearing on August 27, 2025, the Honorable G. Michael Harvey ordered Mr. Simpson

detained pending trial, finding that the government had established by clear and convincing

evidence that no condition or combination of conditions could assure the safety of any other person

or the community.  *See* Order of Detention Pending Trial, ECF No. 10 at 2.  On September 2, 2025,

a grand jury indicted Mr. Simpson on one count of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person Previously Convicted of Crime Punishable by a Term of Imprisonment Exceeding One Year).  On December 8, 2025, Mr. Simpson filed the instant Motion to Suppress Tangible Evidence (ECF No. 37).  This timely response follows.

## ARGUMENT

The defendant's motion fails to proffer sufficient facts to warrant an evidentiary hearing. To the extent the Court determines a hearing is necessary, the evidence will establish that the police had probable cause to arrest the defendant for possession of an open container of alcohol. As a result, officers lawfully recovered the firearm and illegal drugs from the defendant during a search incident to his arrest.

Alternatively, if the Court were to conclude that police lacked probable cause to arrest the defendant for possession of an open container of alcohol, the police nonetheless had reasonable articulable suspicion to detain the defendant, and probable cause to search him, for illegal drug possession.  Accordingly, the police would have inevitably discovered the firearm in the defendant's waistband search incident to his arrest for illegal drug possession and distribution.

## I.    NO EVIDENTIARY HEARING IS WARRANTED

The D.C. Circuit has long held that "[a] defendant is entitled to an evidentiary hearing on his motion to suppress only upon factual allegations which, if established, would warrant relief." *United States v. Law*, 528 F.3d 888, 903-04 (D.C. Cir. 2008) (per curiam) (cleaned up). "If the defendant's assertions are insufficient to establish a constitutional violation, or the District Court need not resolve any disputes of material fact to decide the suppression motion, denial of a hearing is warranted." *United States v. Neely*, 124 F.4th 937, 951 (D.C. Cir. 2024) (cleaned up).

As the First Circuit has explained, "[e]videntiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that a warrantless search has occurred. To make this showing the defendant must allege facts, sufficiently definite, specific, detailed and nonconjectural, to enable the court to conclude that a substantial claim is presented. The defendant must allege facts that, if proven, would entitle him to relief." *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994).

Here, the defendant's motion fails to meet that standard.[1] Even under the defendant's own recitation of the facts, his motion does not meaningfully dispute the facts that gave rise to law enforcement's actions or otherwise raise a material factual issue requiring resolution through an evidentiary hearing. Specifically, the defendant does not directly contest that police observed him in public with an open container of alcohol prior to the recovery of the firearm. Motion to Suppress Tangible Evidence at 1. Nor does the defendant identify any factual basis to undermine the lawfulness of the officers' subsequent conduct. Instead, the motion relies on generalized assertions that are insufficient to warrant a hearing.

Judges in this District routinely deny requests for evidentiary hearings if the defendant fails to proffer facts that could plausibly lead to the suppression of evidence. *See, e.g., United States v. Baez*, No. 21-cr-507 (PLF), 2024 WL 4880011, at *6 (D.D.C. Nov. 25, 2024); *United States v. Harris*, No. 19-cr-358 (RC), 2021 WL 1167263, at *4 (D.D.C. Mar. 26, 2021); *see also United States v. Marx Jackson*, No. 19-cr-126 (BAH) (D.D.C. Oct. 8, 2019 Minute Order) (in advance of a

---

[1] While the motion avers that Mr. Simpson "by no means adopts as true the version of events provided by Officer Harleston," Motion to Suppress Tangible Evidence at 1 n.1, it is the defendant's burden to proffer facts that would support the relief he seeks. He is not entitled to an evidentiary hearing as a fishing expedition. *See United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y. 2019) ("Nor will we grant defendant an evidentiary hearing [on a motion to suppress tangible evidence] so that he may go on a fishing expedition for indicia of unreasonableness.").

scheduled evidentiary hearing, directing the defendant to address in writing the government's argument "that the motion to suppress [tangible evidence] should be decided on the pleadings, without an evidentiary hearing, due to the sparsity of the facts and the conclusory nature of the legal arguments"). As Mr. Simpson's motion does not meet the burden to warrant an evidentiary hearing, the Court should summarily deny the motion without a hearing.

## II.    THE POLICE LAWFULLY SEARCHED THE DEFENDANT INCIDENT TO ARREST FOR POSSESSION OF AN OPEN CONTAINER OF ALCOHOL

### a.    The Police Had Probable Cause to Arrest the Defendant for Possession of an Open Container of Alcohol

The Fourth Amendment protects the right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. The Fourth Amendment also permits officers to make a warrantless arrest for offenses that have been committed in their presence in a public place. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

A warrantless arrest must be supported by probable cause that the arrestee was engaged in criminal activity. *United States v. Laing*, 889 F.2d 281, 285 (D.C. Cir. 1989). Probable cause to arrest exists "if a reasonable and prudent officer would conclude from the totality of the circumstances that a crime has been or is being committed." *United States v. Holder*, 990 F.2d 1327, 1328 (D.C. Cir. 1993). "If an officer has probable cause for an arrest, he may then conduct a full search of the arrestee's person incident to arrest." *United States v. Williams*, Case No. 25-cr-112 (LLA), 2025 WL 2639171 at *3 (D.D.C. Sept. 12, 2025).

Possession of an open container of alcohol ("POCA") is a misdemeanor. D.C. Code §§ 25–1001(a), (d). And D.C. law explicitly permits the police to make a warrantless arrest for a

misdemeanor offense committed in the officer's presence. D.C. Code §§ 23–581(a)(1)(A), (B). Indeed, a "POCA violation, no matter how minor, create[s] probable cause to effect an arrest. *Cooper v. District of Columbia*, 548 F. Supp. 3d 170, 183 (D.D.C. 2021). The D.C. Court of Appeals has held, the police's observation of a person, in public, in possession of a container of alcohol with some liquid inside it (i.e., not full, not empty), provides probable cause to arrest the person. *Bean v. United States*, 17 A.3d 635, 637 (D.C. 2011) (officer had probable cause to arrest motorist for POCA after observing bottle of cognac on driver's side floorboard with a broken seal that was a quarter full); *see also United States v. Washington*, 670 F.3d 1321, 1322-25 (D.C. Cir. 2012) (police had probable cause to arrest motorist for POCA after observing "strong smell of alcohol coming from car," "a small amount of red liquid in open cup in the car," and a puddle on the floorboard).

Here, Officer Sibrian, while seated in his police cruiser, observed the defendant in a public place, seated on the sidewalk in the 1400 block of Saratoga Avenue NE, holding a container of alcohol, a Sutter Home wine bottle, with some amount of liquid inside. While still seated in his police cruiser, officer Sibrian observed Mr. Simpson place the wine bottle on the ground on the left side of his lawn chair. And when Officer Sibrian recovered the wine bottle, the seal was broken, there was some red liquid in the bottle, and he could smell the odor of an alcoholic beverage. In other words, Mr. Simpson was in possession of an "open container of alcohol" in a public place.[2] The police therefore had probable cause to arrest the defendant.

---

[2] D.C. Code § 25-101(35) defines an "open container" as "a bottle, can, or other container that is open or from which the top, cap, cork, seal, or tab seal has at some time been removed."

**b.  The Police Lawfully Searched the Defendant Incident to Arrest**

When the police make a lawful arrest, the Fourth Amendment permits them to search the arrestee and the area within his immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969). This search can occur before or after the formal arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). And the officer's subjective intent for the reason to conduct the search is irrelevant. *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000).

Here, Officer Sibrian and Officer Harleston lawfully placed Mr. Simpson in handcuffs based on Officer Sibrian's observations that the defendant possessed an open container of alcohol, a violation of District of Columbia law.  Officers subsequently performed a search incident to arrest, during which Officer Harleston recovered the white mylar bag and a digital scale from Mr. Simpson's cross-body satchel, and Officer Sibrian conducted a pat down of the defendant, and felt a hard object consistent with a firearm in Mr. Simpson's pants.  Officer Harleston then recovered a loaded Springfield Armory Hellcat pistol from Mr. Simpson's waistband.

This search did not violate the Fourth Amendment. Once officers had probable cause to arrest Mr. Simpson for the possession of an open container of alcohol, they were authorized to conduct a search incident to arrest. That authority extends to a protective pat down for officer safety and to the search of the arrestee's person and areas immediately associated with him. The fact that the firearm was recovered during a lawful pat-down incident to arrest — and that the precise sequence of the pat-down and formal arrest may have overlapped — does not render the search unconstitutional. *Rawlings*, 448 U.S. at 111; *see also United States v. Riley*, 351 F.3d 1265, 1269 (D.C. Cir. 2003) (where "police had probable cause to arrest" before search, it was "of no import that the search came before the actual arrest").  Accordingly, because officers had probable cause to arrest Mr. Simpson and recovered the firearm from his waistband during a lawful search incident to arrest, the search

was reasonable under the Fourth Amendment and evidence of the recovery of the firearm, and the

contraband in Mr. Simpson's satchel, is admissible at trial.

III.    **THE DEFENDANT'S ILLEGAL POSSESSION OF THE FIREARM IS ADMISSIBLE UNDER THE INEVITABLE DISCOVERY DOCTRINE**

Alternatively, even if the court were to conclude that police lacked probable cause to arrest

Mr. Simpson for POCA, suppression would still be unwarranted because the police would have

inevitably discovered the firearm in the defendant's waistband through lawful means.

Based on their observations of Mr. Simpson and before they had searched his satchel, officers

developed reasonable articulable suspicion to detain Mr. Simpson and probable cause to search his

satchel for evidence of the possession and distribution of illegal narcotics.  After completing their

search of Mr. Simpson's satchel, officers would have had independent probable cause to arrest Mr.

Simpson on drug charges and the firearm would inevitably have been recovered incident to that

arrest. Because the firearm would have been discovered search incident to Mr. Simpson's arrest on

drug charges, suppression is not an appropriate remedy under the inevitable discovery doctrine.

a.    **The Police Had Reasonable Articulable Suspicion to Detain the Defendant and Probable Cause to Search his Cross-Body Satchel for Illegal Drugs**

A law enforcement officer may conduct a brief investigative "*Terry* stop" consistent with the

Fourth Amendment if the officer has "reasonable, articulable suspicion that criminal activity is

afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

The officer's reasonable suspicion "need not rule out the possibility of innocent conduct." *United

States v. Arvizu*, 534 U.S. 266, 277 (2002).  As the D.C. Circuit has explained, a police officer may

temporarily detain an individual if the officer has "reasonable suspicion, supported by specific and

articulable facts and rational inferences from those facts that the person is engaged in criminal

activity." *United States v. Laing*, 889 F.2d 281, 285 (D.C. Cir. 1989) (cleaned up).

Whether a *Terry* stop is supported by reasonable articulable suspicion is an objective standard. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Id.* The evidence that gives rise to suspicion must be "taken as a whole" and "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Clark*, 24 F.3d 299, 301–02 (D.C. Cir. 1994).

An officer's right to make an "investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In deciding what degree of force is permissible, courts look to "the facts and circumstances of each particular case," including, as relevant here, whether the detainee "is actively resisting arrest or attempting to evade arrest by flight." *Id.* At bottom, the officer's use of force must be "reasonable." *Id.* During a *Terry* stop, the police may handcuff a detainee if reasonably necessary for the safety of officers or others. *Laing*, 889 F.2d at 285. It is reasonable for police officers to handcuff a detainee to prevent his flight or to prevent him from accessing a weapon that could be used to harm others, especially the officers. *United States v. Dykes*, 406 F.3d 717 (D.C. Cir. 2005); *cf. Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009) (holding that an officer's force in handcuffing a detainee was not excessive after the detainee refused the officer's orders).

Under the plain view doctrine, evidence seized without a warrant is admissible if three conditions are satisfied: "the officer who obtained the evidence must have been lawfully present at the time of the seizure; the officer must have had a lawful right of access to the object itself; and the incriminating nature of the evidence must have been immediately apparent." *United States v.*

*Thomas*, Case No. 17-CR-194 (RDM), 2020 WL 6392762 at *2 (D.D.C. Nov. 2, 2020).  The incriminating nature of evidence is immediately apparent where an officer has "probable cause to believe that an item was incriminating without the benefit of information from any unlawful search or seizure."  *United States v. Pindell*, 336 F.3d 1049, 1055 (D.C. Cir. 2003).  "There must be 'a practical, nontechnical probability that incriminating evidence is involved' to establish probable cause under the plain view doctrine."  *Thomas*, 2020 WL 6392762 at *2 (quoting *Pindell*, 336 F.3d at 1055).  Although the meaning of the "immediately apparent requirement" has been the subject of debate within the Supreme Court and the lower courts, "it is settled that 'the phrase 'immediately apparent' " does not require "temporal" immediacy but, rather, encompasses situations in which "the incriminating nature of the item ... become[s] apparent[ ] in the course of the search, without the benefit of information from any unlawful search or seizure.'"  *Id.* (quoting *United States v. Garces*, 133 F.3d 70, 75 (D.C. Cir. 1998)).

Here, the police had at minimum, reasonable articulable suspicion to briefly detain the defendant to investigate whether he was in possession of more than two ounces of marijuana in violation of D.C. Code § 48-904.01(a)(1)(A).  This is because Officer Sibrian observed, in plain view, the defendant's possession of a white mylar bag capable of holding more than two ounces of marijuana and which Officer Sibrian knew to be commonly used to store marijuana.  The portion of the white mylar bag that was initially visible to Officer Sibrian was in plain view as Mr. Simpson's satchel was partially unzipped.  Officer Sibrian recognized, based on his training and experience, that this kind of mylar bag could hold more than two ounces of marijuana.[3]  This observation led Officer Sibrian to ask Mr. Simpson how much weed he had in his bag.  Mr. Simpson responded,

---

[3] *See Texas v. Brown*, 460 U.S. 730, 743 (1983) (the "distinctive character" of an object can speak "volumes as to its contents—particularly to the trained eye of [an] officer").

"it's not a lot" and Mr. Simpson squeezed his satchel. When Officer Sibrian asked Mr. Simpson to fold up the satchel, Mr. Simpson responded by opening the satchel and removing the white mylar bag. This allowed Officer Sibrian to observe that although the larger mylar bag that initially drew his attention to Mr. Simpson's satchel did not appear to be full, the defendant also possessed multiple smaller mylar bags and clear plastic bags inside of the satchel, which in his training and experience is often consistent with the distribution of illegal drugs rather than personal possession. Officer Sibrian's observations established reasonable articulable suspicion for police to detain the defendant and probable cause to search his bag for additional evidence of illegal drug possession. Officer Sibrian and Officer Harleston then placed Mr. Simpson in handcuffs, at which point Officer Harleston began to search Mr. Simpson's satchel.

### b. __Police Would Have Inevitably Discovered the Firearm in Mr. Simpson's Waistband__

Where evidence is discovered as the result of an unlawful search, it may nonetheless be admissible if its discovery was inevitable. "To prevail on an inevitable discovery theory, the government must prove by a preponderance of the evidence that 'even without the unlawful seizure, the evidence it seeks to admit would have been discovered anyway.'" *United States v. Wills*, 316 F. Supp.3d 437, 447 (D.D.C. 2018) (quoting *United States v. Holmes*, 505 F.3d 1288, 1292 (D.C. Cir. 2007)). When determining if the government has met this burden, the Court assess the "demonstrated historical facts capable of ready verification or impeachment." *Id.* "Inevitable discovery involves no speculative elements." *Holmes*, 505 F.3d at 1293.

Here, police had probable cause to search Mr. Simpson's satchel for evidence of illegal drug possession based on Mr. Simpson's possession of the large white mylar bag and the officer's plain view observation of additional mylar and clear bags in the defendant's satchel. Because officers had

a lawful basis to search Mr. Simpson's person and his satchel, discovery of both the firearm in Mr. Simpson's waistband and the additional evidence of drug trafficking in his satchel was inevitable.

Here, Officer Harleston had not yet completed his search of Mr. Simpson's satchel when Officer Sibrian began a protective pat down of the defendant and felt an object consistent with a firearm in the defendant's waistband. Once Officer Sibrian announced the predetermined codeword for the presence of a firearm, Officer Harleston paused his search of Mr. Simpson's satchel and focused on removing the loaded firearm Mr. Simpson's waistband. Assuming *arguendo* that Officer Sibrian did not have a lawful basis to conduct a *Terry* frisk of Mr. Simpson at the precise moment he did so, Officer Harleston would have completed his search of Mr. Simpson's satchel and located the 5.6 grams of a white rock-like substance, which field-tested positive for cocaine base. This discovery, combined with the scale Officer Harleston had already recovered from the defendant's satchel, would have provided police with probable cause to arrest Mr. Simpson for possession with intent to distribute a controlled substance in violation of D.C. Code § 48-904.01(a)(1) and search Mr. Simpson incident to arrest, at which point they would have discovered the loaded firearm in his waistband.

Accordingly, the loaded firearm police recovered from Mr. Simpson's waistband is admissible under the inevitable discovery doctrine. The other physical evidence and contraband recovered from Mr. Simpson's satchel is admissible because it was discovered after police established they had probable cause to search Mr. Simpson's bag. Therefore, Mr. Simpson's motion should be denied.

## <u>CONCLUSION</u>

For all the foregoing reasons, the government respectfully requests that the Court deny the

defendant's motion to suppress tangible evidence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: *<u>/s/ Benjamin Helfand</u>*
    Benjamin Helfand
    Assistant United States Attorney
    DC Bar Number 1658708
    United States Attorney's Office
    601 D Street NW
    Washington, DC 20530
    Telephone: 202-252-7059
    Email: Benjamin.Helfand@usdoj.gov